and held that that was not necessary. The evidence here brings forth nothing new but a fence, and it seems to me we cannot draw a distinction from that case upon the testimony as to one or two tracks at Schenectady differently situated and which are operated under different circumstances. The trial justice correctly interpreted that decision.

It is the law of this case, binding upon all courts, and, unless the Court of Appeals sees fit to overrule or limit it, the plaintiff cannot recover.

LYON, J., concurs.

<hr>

(153 App. Div. 352.)

JACOBY v. BROOKLYN, Q. C. & S. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. November 27, 1912.)

1. DAMAGES (§ 185*)—EVIDENCE—WEIGHT AND SUFFICIENCY—PERSONAL INJURIES.

In an action for personal injuries, evidence *held* insufficient to show a fracture or partial fracture of the pelvis.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 503–508; Dec. Dig. § 185.*]

2. EVIDENCE (§ 570*)—CREDIBILITY—EXPERT WITNESSES.

The testimony of an expert whose relations to the case are purely professional should not be discredited merely because he received compensation for such testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2395; Dec. Dig. § 570.*]

Appeal from Trial Term, Queens County.

Action by Jennie Jacoby against the Brooklyn, Queens County & Suburban Railroad Company and another. From a judgment for plaintiff and orders denying motions by each defendant for a new trial, the defendants appeal. Reversed, and new trial ordered conditionally.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

D. A. Marsh, of Brooklyn, for appellant Brooklyn, Queens County & Suburban Railroad Company.

Terence Farley, of New York City (Edward S. Malone, of New York City, on the brief), for appellant City of New York.

George F. Hickey, of New York City (M. P. O'Connor, of New York City, on the brief), for respondent.

JENKS, P. J. The action is for negligence. The plaintiff, a passenger in the defendant railroad's street surface car, when attempting to alight, stepped into a hole in the street, and fell, to her injury. I think that the case was submitted to the jury properly, and that neither the evidence nor the rulings justify disturbance of the finding that casts liability upon both defendants.

[1] But I think that the verdict of $3,000 is excessive, for the gravest injury complained of, a fracture or a partial fracture of the pelvis, permanent in its nature, was not established by a fair pre-

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ponderance of the evidence. If the jury considered this injury established, it should not have done so; and, if it did not, then the damages are far too large. The testimony germane to this feature is necessarily medical, as such injury is occult to laymen, and is somewhat a matter of uncertainty to medical men. All of the witnesses who spoke to this injury were in a sense feed retainers of their respective sides, save the family physician of the plaintiff, and he doubtless had either received his professional fee or was in expectation of it. I comment upon the character of these witnesses because the criticisms and often hypercriticisms which are leveled at experts—that they are paid witnesses, chosen only after their favorable opinions are ascertained, who testify free from the perils of perjury, secure in opinions which are essentially matters of their special knowledge—cannot obtain in this case, or at least are impartially applicable.

[2] There is no good reason why an expert whose relations to a case are purely professional, and whose competency exists perforce of his profession, should not be compensated or why the fact of such compensation should of itself discredit him. So long as the present procedure as to expert witnesses is in force, the criticism upon it should not be directed to the individuals who by it alone must be brought to the witness stand. My conclusion in this case is not reached solely by comparison of the qualifications of these witnesses, but also upon consideration of their testimony in articulation with the evidence.

Dr. Rogers, the attendant physician of the plaintiff, testifies that his examination determined that the plaintiff was suffering from a fracture of the pelvis, which was permanent. He detailed at some length his reasons. On cross-examination he first admitted he did not absolutely determine the injury from his own observation; that he did not make such determination; and, again, that from what he had found he diagnosed the case as one of fracture. He finally explained his testimony by saying that it is a matter of opinion, not of positive knowledge, and then denied that he had said that his determination was not the result of his own examination. He admitted that it was necessary to administer an anæsthetic in order to reach a positive determination by examination, but that he had never pursued this course. He was not prepared to testify whether he did or did not say to a physician sent by the defendant railroad corporation to examine the plaintiff:

"No, Doctor, there is no necessity for making any vaginal examination, because we do not claim that she is or has had an injury to her pelvic organs at all."

And, finally, in answer to the court, he testified that he ascertained the condition of a broken pelvis when he had the X-ray picture before him.

Dr. Diefenbach, called by the plaintiff, testifies that, in addition to general practice, he is a specialist in X-ray pictures; that he examined and took an X-ray photograph of the pelvis, and the original plate was read in evidence. The first photograph was taken

in December, 1909, eight months after the accident, and the second one December 2,' 1910, more than a year and a half thereafter. He expresses the .opinion that the photographs showed that there was a separation of the ilium, or a fracture of the upper portion, and he undertook to demonstrate from the photographs. He admitted on cross-examination that the radiograph is not a picture or even a photograph, except in the sense that photographic materials are used in its production, but rather a special kind of projection, more like a slide for a microscope than a photographic view, and therefore that it was not wise for a layman, or even medical men, to depend too much on the lines and lights and shadows in the X-ray picture unless they have sufficient experience. He was subjected to a very long cross-examination that tested the reasons for his opinion. He admitted that it was very difficult to tell about any of the pelvic bones.

Dr. Platt, called for the plaintiff, testifies that he had used the X-ray for his own purposes to some extent; that he attempted to take an X-ray photograph of the plaintiff's pelvis on two occasions without success; and that he made a local examination, externally and internally, to find pain and tenderness over the right hip, externally, and on the right side. He testifies that he had examined carefully the X-ray plates, and that as the result thereof, and of his physical examination, he found a fracture of the ilium. The symptoms which induced such belief were the pain and tenderness—all that he found. He testifies that the usual symptoms of fracture of such bone are pain, tenderness, crepitus, and abnormal mobility. He discovered no crepitus, which, he says, is difficult to find.

' I will now review the medical evidence for the defendants. Dr. Williams examined the plaintiff on the 19th of April at her home, in the presence of her family physician, who gave the history of the case, and said that he thought the plaintiff had some kidney trouble on the right side, but made no mention of a fracture. He testifies that he made a thorough examination, and details the examination. He determined that she was simulating the presence of pain, and says that he was not able to find any injury. There was no mention made of her foot, and there was no examination made of it. He testifies that a woman with a broken pelvis would not be able to walk and do the things described by the plaintiff in her testimony, and is also of opinion that a woman could not possibly suffer a fracture of the pelvis from the accident as described by the plaintiff.

Dr. Gildersleeve, who made an examination of the plaintiff in the presence of her family physician between two and three months after the accident, testifies that there was "absolutely nothing the matter with her" so far as he observed—that she had some little trouble incidental solely to childbirth. He, too, was of opinion that she was simulating, and detailed his experiments which led to this belief.

Dr. Eastmond testified that he made a specialty of the X-ray diagnosis, and that he had made an examination of the plates in evidence, and that he was positive that neither one of the plates show any evidence of 'a fracture or half-fracture of the pelvis. He accounted in another way for the features of the plate upon which the witnesses for the plaintiff rested their belief of fracture.

Dr. Waterman made an examination of the plaintiff on October 4, 1909, in the presence of her family physician. He testifies that he made a thorough examination, vaginal as well as rectal, and that he made her flex her body and move her legs; that the motions of the plaintiff were all normal; and that she was simulating.

Dr. Albee testifies that he examined the plaintiff's photographic exhibits, and explains at very great length that there is no indication of any fracture whatever therefrom—that he had no doubt whatever on the subject. Within the limits of this summary it is impracticable to reproduce his very long and detailed explanation. In his cross-examination he testifies that he had interpreted 10,000 plates, and that he had rarely disagreed with other X-ray specialists in interpretation. Indeed, he could name but two instances when there had been any disagreement with other physicians, and they conceded ultimately that their diagnosis was erroneous.

The plaintiff testifies that her hip did not strike the ground; "that no part of my hip or my buttocks struck the ground;" that the lower part of her body struck the ground, and that her right leg bent under her, and she was twisted; that the only part of her that struck the ground was her knee and the lower part of her body; that "the side of my body struck the ground," but, when her attention was called to this variance, she said that she meant her limb, that no other part of her struck the ground except her hands, and that by her right side she referred to a place half way or more down from her hip. She testifies that, when she arose, she was assisted to the curb; that she sat down there for about five minutes, and with the assistance of two young girls she went around the corner of the street to a butcher shop, where she sat down upon a bench, and she remained for an hour and a half until her husband came; that, when she left the butcher shop, she walked a few doors to the corner to a car; that she boarded the car in the usual way, went inside, and sat down in the usual way; that the car stopped at her door, where she alighted, walked into the house, and went upstairs with the assistance of her husband. She then went to her bed. But she arose from her bed the next afternoon and dressed herself. When these actions were described to her family physician upon his cross-examination, and he was asked whether he would say that a person was suffering from a pelvic fracture, he replied that he could not answer that question. And to the further question whether a person who did all those things could be the subject of pelvic fracture he replied that he could not answer that question "yes" or "no." When the same physician was asked on cross-examination, "Q. It is in evidence here that the claimant states that she did not fall on her hip, but fell forward on her knee. Is it not a fact that most of the authorities are pretty well agreed that a fracture of the ilium is almost exclusively due to some direct violence?" he answered, "Yes." And he further answered on cross-examination:

"I have never in my entire experience, or in looking over the literature on the subject of fractures of the pelvis, known of any case like this, where the injury has been sustained, and every known definite symptom wanting."

He added:

"I think it possible, though, for a person who has sustained an injury such as a fracture of the pelvis to be able to go home immediately after the accident in a trolley car"

—and that he thought it would be possible for a person to get on to the step of a car and get off the step of the car with the assistance of one person.

Dr. Platt, called by the plaintiff, stated that he did not believe that one who had sustained such a severe injury as fracture of the pelvis would be able to get out of bed within the first 24 hours after the alleged injury, even for only a short time.

Dr. Gildersleeve, called by the defendant, testifies that a woman with a fractured pelvis could certainly not have done these things; that a fall such as described by her could not have produced such an injury; and that, if a woman had a fractured pelvis, she certainly would not be able to leave her bed upon the next day, to dress herself, and go about the house.

Dr. Waterman, called by the defendant, stated that never in his entire experience in practice, or in the literature of his profession, had he known of any case where this injury had been sustained and every known definite symptom wanting, as appeared in this case; that he did not think it possible that a person who had sustained such an injury could thus reach her home immediately after the accident, and rise from her bed 24 hours afterwards; that in his opinion fracture of the pelvis could not occur from the accident as described by the plaintiff, and that he had never heard or read of a case where a woman who had a fractured pelvis could walk around, even with the assistance which was testified to; and that in all the cases which he had observed he had never seen such a thing happen, for such an injury is very severe.

To recapitulate. The witnesses for the plaintiff are outweighed as to the X-ray pictures, upon which they relied greatly, especially the physician in attendance on the plaintiff. They are outweighed on the question of the physical examinations made to ascertain the injury. The actions of the plaintiff subsequent to the accident are quite inconsistent with the existence of such an injury. This is testified to by the defendants' experts, and not contradicted by the plaintiff's experts, who rather take refuge in inability to reconcile the acts with the injury, save by the last resort of possibility without facts to indicate them. And, finally, there is little, if any, dispute that such an injury is generally the result of a crushing of the body when between two very heavy substances, as the passage of a heavily laden wagon over a person prone in a roadway, or the crushing of a person between the bumpers of railway cars; and the great weight of the testimony is that such injury could not result from the accident in this case. I have not detailed the comparative standing and experience of these various medical witnesses, but without the slightest reflection upon those called by the plaintiff I can very properly say that some of those summoned by the defendant have had more experience, and

therefore, other things being equal, speak with more authority both as to the X-ray and the existence of the injury.

I think that $1,000 would be adequate compensation for the injuries which could have been found as proven. I advise that the judgment and order should be reversed and a new trial should be granted, costs to abide the event, unless the plaintiff, within 20 days, stipulate for such reduction, in which case the judgment, as modified, and the order, should be affirmed, without costs of the appeal. All concur, except THOMAS. J., who votes to affirm.